William B. **LANDWEHR**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 16869.

United States Court of Appeals Eighth Circuit.

June 21, 1962.

---

John L. Sullivan, St. Louis, Mo., for appellant.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., for appellee; D. Jeff Lance, U. S. Atty., St. Louis, Mo., and Lee J. Placio, Jr., Asst. U. S. Atty., with him on the brief.

Before VOGEL, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

William B. Landwehr, appellant herein, was convicted by a jury under an indictment charging a violation of 18 U.S. C.A. § 2312, involving the transportation of a stolen motor vehicle in interstate commerce. He attempted to appeal from his conviction and sentence, asking leave to proceed *in forma pauperis*. On November 16, 1961, the United States District Court for the Eastern District of Missouri certified that the appeal was without merit, not taken in good faith, and permission was denied. Subsequently, on November 29, 1961, counsel who represented appellant at the trial in District Court was appointed by this court to represent him with regard to the question of whether or not he should be permitted to prosecute his appeal *in forma pauperis*. Leave to do so was granted by this court on March 13, 1962.

For purposes of this appeal, an "Agreed Statement of Facts" was entered into by the appellant and the government indicating the following: On or about February 3, 1961, appellant went to the Burns Buick Company of Maplewood, Missouri, where he selected for purchase a 1953 Buick sedan priced at $325. Appellant dealt with salesman William Rose during this transaction. According to Rose, appellant told him that the car was being purchased for appellant's daughter, away at college, and that his company, the Century General Agency, had previously purchased other automobiles from the Burns Buick Company, both statements being false. Appellant denied making the statements. In payment for the car, appellant gave Rose a check, signed by him, in the amount of $325, drawn on the Century General Agency account with the City National Bank of Centralia, Illinois, and payable to Burns Buick Company. Appellant testified that he told Rose there

were insufficient funds in the bank at that time, but that the car would be financed in Evansville, Indiana, upon his arrival there and funds deposited. Rose denied that he had been requested by appellant to hold the check until financing could be arranged or for any other reason and testified that there had been no such conversation.

Appellant was given possession of the automobile on that same day, February 3rd, although he was informed that the title would not be delivered until later. On February 10th appellant picked up the title to the car. Two days later the check was returned marked "insufficient funds".

Testimony of the cashier of the City National Bank indicated that at the time the purchase of the car took place the Century General Agency had in its account but $50; that such account was first opened by the appellant on January 3, 1961, with a deposit of $163.71; that the balance gradually dwindled until on January 21st there was a balance of $36.35; that deposits made on January 25th brought the account to $193.87, which amount was the highest balance ever carried in the account. Thereafter, on February 5th, when the check was presented at the bank, there was a balance in the account of $23.74; that the balance thereafter decreased until on February 17, 1961, there was $1.99; and that the account was subsequently closed on February 18th for charges incurred because of insufficient funds checks.

The records of the bank revealed that appellant, in opening the checking account with the bank, listed as references two business men, both of whom subsequently testified over objection that they had not given permission to use their names as references. They admitted having conversations on one or two occasions with the appellant, such conversations being unrelated to the furnishing of references.

Further testimony established that appellant had been seen driving the car in Evansville, Indiana, and that upon arrest he admitted driving the car from the State of Missouri to Evansville, Indiana.

Appellant first assigns as error the admission of the testimony of witnesses George Rude and Gale Shook, who stated that they had never given permission, nor had they been asked to give permission, to use their names as references for appellant. It was claimed that the introduction of the evidence was prejudicial, irrelevant and remote. The government, on the other hand, contends that this testimony went toward showing the plan or design of the appellant— that is, first obtaining a checking account and then overdrawing it in obtaining the car. It argues that in order to complete the first stage of the plan—the procuring of the account—it was necessary to have references. The government concludes that there was a logical, albeit circumstantial, connection between the testimony of the witnesses and the completion of the plan.

It is well settled that a trial court has "a measure of discretion in allowing testimony which discloses the purpose, knowledge, or design of a particular person." Glasser v. United States, 1942, 315 U.S. 60, 81, 62 S.Ct. 457, 470, 86 L.Ed. 680; Blodgett v. United States, 8 Cir., 1947, 161 F.2d 47, 51, and cases cited therein. Here it is true the intent to procure the automobile under false pretenses was a vital part of the government's case and the trial court did have wide discretion in the admission of evidence tending to establish that intent. We have most serious doubts, however, whether the furnishing of names as references for the purpose of opening a bank account a month prior to the issuance of the check in dispute has sufficient bearing on any essential element of the offense charged to warrant the admission of testimony to that effect. We conclude that while the admission of the testimony was erroneous, it was, under the circumstances herein, not prejudicial. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S. C.A.

■■ The next assignment concerns an instruction to the jury defining the word "stolen" as it is used in the National Motor Vehicle Theft Act, commonly known as the Dyer Act, 18 U.S.C.A. § 2312, and to which instruction appellant made specific objection. The challenged instruction is as follows:

> "It is an essential element of the crime charged in the indictment of this action that the automobile involved had been stolen. In determining whether the car had been stolen, you are instructed that by 'stolen' is meant that it was taken from its true owner feloniously, that is to say, with guilty intent, and with the intent to deprive such owner of the rights and benefits of such ownership. You are further instructed that such a felonious taking exists where the owner of the automobile was induced to part with his rights and benefits of ownership by means of fraudulent representations or false pretenses as to some existing fact or facts upon which the owner relied and without which fraudulent representations or false pretenses the owner would not have parted with such right and benefit of ownership."

Appellant's argument, in substance, is that this broad definition of "stolen" is not applicable to a case dealing with the passing of a check returned because of "insufficient funds", drawing a distinction between such situation and that involving "worthless" checks where the account is non-existent. See Scott v. United States, 4 Cir., 1958, 255 F.2d 18, certiorari denied 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555, affirming conviction involving checks drawn on a non-existent account. Appellant argues that there is no reported federal case holding that the tender of an insufficient funds check and the obtaining possession and title to a motor vehicle thereby is within the statute. We think a motor vehicle obtained by the giving of an insufficient funds check is no less "stolen" than one acquired by the giving of a check on a non-existent account. Both are worthless in that neither can be cashed. The same evil intent may accompany each. In each case the car or other property has been acquired by false pretenses.

In United States v. Turley, 1957, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430, the Supreme Court was defining the word "stolen" as it is used in § 2312. It stated at pages 416–417 of 352 U.S., at page 402 of 77 S.Ct.:

> " * * * Public and private rights are violated to a comparable degree whatever label is attached to the felonious taking. A typical example of common-law larceny is the taking of an unattended automobile. But an automobile is no less 'stolen' because it is rented, transported interstate, and sold without the permission of the owner (embezzlement). *The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses).* Professional thieves resort to innumerable forms of theft and Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion.

> "We conclude that the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. *'Stolen' as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."* (Emphasis supplied.)

Nowhere therein is it indicated that "a worthless check" is only one that is

drawn on a non-existent account.[1] " * * * [A]ll felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership" is sufficiently broad to include the giving of an insufficient funds check. There was no error in giving the instruction.

Appellant's third and final point is that there was insufficient evidence to support the verdict. Appellant argues that the government has relied upon the representations made to salesman Rose as being the basis of the action for false pretenses and that these statements (as to the purchase of the automobile for appellant's daughter and that his company had purchased cars before at Burns Buick) were not relied upon by the owner of the company, who was the one who actually parted with title to the car, rather than the salesman to whom the misrepresentations were allegedly made. The government's argument, however, is that it is not relying upon the oral representations. It contends that the writing and tendering of the check was itself a representation that there were sufficient funds in the account and that it would be paid.

Whether or not the appellant was guilty of false pretenses in the issuance and passing of the insufficient funds check was a question of fact for the jury. Here the evidence disclosed that at no time did the appellant have a balance in his bank account sufficient to cover the check issued in payment of the car. The largest balance he ever had in the account was $193.87. Under all of the attendant circumstances, the jury could well find that the appellant falsely pretended that he had sufficient funds in his account to meet the check and that it would be paid upon presentation to his bank. The evidence amply supports the verdict. See Gilmore v. United States, 1959, 106 U.S.App.D.C. 344, 273 F.2d 79, 82; Fidelity & Cas. Co. of New York v. Bank of Altenburg, 8 Cir., 1954, 216 F. 2d 294, 301, certiorari denied 348 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 744.

At this time we express to Mr. John L. Sullivan, of St. Louis, Missouri, our appreciation for his efforts in behalf of the appellant and his assistance to this court in the presentation of this appeal.

Affirmed.

---

1. To the contrary, the United States Supreme Court in Turley, supra, drew no distinction between "no-account" and "insufficient-account" checks when referring to "worthless" checks. 352 U.S. at 416, 77 S.Ct. 397, note 17 and accompanying text. Murphy v. United States, 5 Cir., 1953, 206 F.2d 571, was concerned with insufficient funds, whereas Ackerson v. United States, 8 Cir., 1950, 185 F.2d 485, dealt with a "no-account" check.