**William Edward LOVE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18676.**

United States Court of Appeals Eighth Circuit.

Dec. 13, 1967.

Certiorari Denied March 11, 1968. See 88 S.Ct. 1111.

See also D.C., 259 F.Supp. 947.

Harold A. Dronen, Fargo, N. D., for appellant and filed brief.

Gary Annear, Asst. U. S. Atty., for the District of North Dakota, Fargo, N. D., for appellee; John O. Garaas, U. S. Atty., for the District of North Dakota, Fargo, N. D., was on the brief.

Before VOGEL, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

VOGEL, Chief Judge.

Following grand jury indictment, William Edward Love, appellant herein, was tried before and found guilty by a jury of a violation of 18 U.S.C.A. § 2312, commonly referred to as the Dyer Act. Appeal is taken from the judgment of conviction.

The facts upon which this appeal is based are for the most part uncontroverted. On Sunday, May 22, 1966, appellant Love negotiated in Aberdeen, South Dakota, with Merle Bieber for the purchase from Bieber of a 1963 Chevrolet Impala automobile which Bieber had advertised as being for sale. After some negotiating a price of $1,650 was agreed upon. Appellant gave Bieber two documents, dating them the preceding day, May 21, 1966. These documents became known as Exhibits 1 and 2. Exhibit 1 was drawn on a check blank of a Sturgis, South Dakota, bank and made payable to Merle Bieber for $1,650. This document had a notation in very cramped partially illegible handwriting to the effect that it was a sight draft to be presented ten days after the purchase. Exhibit 2 was an "Automobile Purchase Draft" in the same amount made payable through the same bank which appellant described to Bieber as, "Oh, that's just kind of for your records or a receipt for you." He did not indicate to Bieber that the so-

called Automobile Purchase Draft or "receipt" should be presented to the bank or sent through banking channels for payment.

Upon receipt of Exhibits 1 and 2, Bieber transferred the car title over to the appellant. Appellant took possession of the car and drove it to Fargo, North Dakota, where the next day, May 23, 1966, he sold it to Muscatell Chevrolet for $1,000, receiving a check in that amount in payment.

Bieber deposited Exhibit 1 in his account in the Aberdeen National Bank, from which it was forwarded through banking channels to the Sturgis, South Dakota, bank for payment. The Sturgis bank treated Exhibit 1 as a check and returned it marked "Acc't Closed". Exhibit 1 was returned to Bieber on Saturday, May 29, 1966. It was not again presented to the Sturgis bank for payment. Exhibit 2 was never presented to the bank.

On July 12, 1966, the appellant was in jail in Duluth, Minnesota, on a state charge concerning the theft of an automobile. He was represented by John Durfee, the Public Defender. At a conference appellant asked the Public Defender to contact an F.B.I. agent for him. At a hearing in the trial court's chambers during the trial of this case below, the Public Defender testified that appellant said he wanted to see an F.B.I. agent so that he could be prosecuted by the federal government rather than by a state government.

Malford Eid, an F.B.I. agent, did, at the request of the Public Defender, call upon the appellant on July 13, 1966, while the appellant was confined in jail in Duluth, Minnesota. Appellant told the F.B.I. agent that he did not want to make a statement but that he wanted the F.B.I. to assist him in returning certain cars to their original owners. After first advising the appellant of his rights, the F.B.I. agent took down the information given him by the appellant in the form of a statement which appellant refused to sign but which was corrected in several instances at the suggestion of the appellant.

This statement referred to a number of illegal automobile transactions in addition to the one involved here.

During the trial additional evidence was admitted showing the appellant's banking transactions at the Sturgis, South Dakota, bank.

On this appeal, Love raises four contentions in urging that his conviction be reversed. His claimed grounds of error are:

1. The trial court erred in denying the appellant's motion for a directed verdict of acquittal because at the time the vehicle was transported across state lines appellant owned the car and accordingly no Dyer Act violation occurred.

2. The evidence is insufficient to support the verdict because the government failed to establish the requisite intent.

3. The trial court erred in admitting into evidence the F.B.I.'s memorandum dated July 13, 1966, and erred further in denying appellant's motion for mistrial after admitting the memorandum.

4. The trial court erred in admitting into evidence records and information regarding appellant's banking transactions.

We overrule the appellant on all points and affirm the conviction.

Appellant's first contention is entirely without merit. When he transported the automobile from South Dakota into North Dakota he was not the owner thereof. Whether Exhibit 1 was a check, as Bieber was led to believe by the appellant, and as it was treated by the Aberdeen and Sturgis banks, or whether it was a draft for collection ten days after presentation is immaterial here. The testimony shows that at no time did the appellant have enough money in his account in the Sturgis bank to cover the check and that he made no arrangements of any kind for payment of check or draft. Additionally, his account in the bank had been closed at the time he executed Exhibit 1. Obviously, as the jury found, he obtained the Chevrolet automobile under false pretenses. While some older cases strictly interpret the meaning of the word "stolen" as used in the Dyer

Act, the Supreme Court clarified the issues in United States v. Turley, 1957, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430. Noting that the Fifth, Eighth and Tenth Circuits favored the narrow definition of the word "stolen" while the Fourth, Sixth and Ninth Circuits favored a broad one, the Supreme Court set at rest the conflicts by saying, at pages 416–417 of 352 U.S., at page 402 of 77 S.Ct.:

" * * * Public and private rights are violated to a comparable degree whatever label is attached to the felonious taking. A typical example of common-law larceny is the taking of an unattended automobile. But an automobile is no less 'stolen' because it is rented, transported interstate, and sold without the permission of the owner (embezzlement). The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses). Professional thieves resort to innumerable forms of theft and Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion.

"We conclude that the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. 'Stolen' as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."

Appellant cites to us the District Court case of United States v. O'Carter, D.C. Iowa, 1949, 91 F.Supp. 544. The rule expressed in O'Carter has long since been overruled by *Turley* and also by this court in Landwehr v. United States, 8 Cir., 1962, 304 F.2d 217, 220. It is settled law that the word "stolen" as used in the Dyer Act is to be liberally construed.

[3, 4] The resolution of the appellant's first contention leaves little substance to the second, wherein he claims insufficiency of the evidence to support the verdict. Ample evidence justified the jury's finding that the car was taken under false pretenses, whether we consider Exhibit 1 to be a no-account check, as contended by the government, or a ten-day sight draft, as contended by the appellant. In either case the appellant represented to Bieber that he would be paid through the agency of the Sturgis bank when at the time the document was given appellant knew or certainly should have known that he had no funds deposited with the bank. Appellant's checking account at the Sturgis bank was closed by the bank on May 11, 1966, eleven days prior to the transaction between appellant and Bieber, and no arrangement was made with the Sturgis bank to act as a clearing house for bank drafts, either before or after the purported draft or drafts were drawn. Where sufficiency of the evidence is challenged, an appellate court must take that view of the evidence most favorable to sustaining the jury's verdict and hold as established all reasonable inferences that flow therefrom and tend to support the verdict. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Canaday v. United States, 8 Cir., 1966, 354 F.2d 849, 851; McIntosh v. United States, 8 Cir., 1965, 341 F.2d 448, 451, certiorari denied, 381 U.S. 947, 85 S.Ct. 1778, 14 L.Ed.2d 711. Here, the day after "buying" the car for $1,650, appellant sold it in another state for $1,000. He made no attempt to apply the proceeds of this sale toward the purchase of the automobile from Bieber. In addition, the oral statement of the appellant to the F.B.I. agent shows that appellant had followed a similar practice with other cars, from which the jury could draw the inference of specific intent and the absence of mistake. Whether appellant was guilty of obtaining the car under false pretenses was a question of fact for determination by the jury and there was ample evidence to support its

conclusion. See, Landwehr v. United States, supra, 304 F.2d at page 221.

In connection with appellant's third claimed error, John Durfee, the Public Defender who had represented the appellant on the state charge in Duluth, testified in this case, laying a foundation for the admission of Exhibit 8, appellant's unsigned statement given to F.B.I. Agent Eid. Durfee testified that he represented appellant for a 15-day period and that during that period appellant requested him to contact an F.B.I. agent because he wished to make a statement. Durfee told F.B.I. Agent Eid of appellant's request. Appellant did not request Durfee's presence while he was conferring with the F.B.I. agent. Neither the calling of Durfee as a witness nor his testimony was objected to by appellant. Nevertheless, he now contends that Durfee's testimony concerned a privileged attorney-client communication so that it was inadmissible and that such testimony generated an inference that appellant had committed other crimes so that the testimony was prejudicial. Appellant also contends that the testimony of Durfee in a judicial hearing in the court's chambers outside the presence of the jury to determine the voluntariness of appellant's statement was also error.

■■ By statute in North Dakota, the law of the forum, the attorney-client relationship is a privileged one. No attorney may be examined concerning any communication made by the client to him without the client's consent. N.D.C.C. § 31–01–06(1). N.D.C.C. § 31–01–07 provides:

> "If a person testifies as a witness as to any subject which comes within the protection of any of the provisions of the first three subsections of section 31–01–06, he shall be deemed to have consented to the examination of an attorney, clergyman, priest, physician, or surgeon on the same subject matter."

During the hearing in chambers on the voluntariness of appellant's statement to the F.B.I. agent, appellant himself testified concerning his conversation with the Public Defender, Durfee. Additionally, he made no objection whatsoever at the time Durfee was called nor during his testimony. We conclude that no error was made by the trial court in receiving Durfee's testimony at the in-chambers hearing.

■ With reference to the brief foundation testimony of John Durfee at the trial and before the jury, we note from the record that no objection was made thereto. The appellant himself did not testify before the jury. Under the law of North Dakota the attorney-client privilege is a personal one and is considered waived where the client fails to object to the attorney's testimony. Weisser v. Preszler, 1932, 62 N.D. 75, 241 N.W. 505, 508–509. Cf., LaMoore v. United States, 9 Cir., 1950, 180 F.2d 49, 12 Alaska 556; Steen v. First National Bank, 8 Cir., 1924, 298 F. 36, 41. Because this court is bound by the law of the forum state on the question of privileged communications, Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623, 627–629, 95 A.L.R.2d 303; United States v. Pape, 2 Cir., 1944, 144 F.2d 778, 782, and it being apparent that under North Dakota law the failure of the appellant to object to Durfee's testimony was a waiver of the attorney-client privilege, appellant is barred from successfully raising the objection for the first time on appeal.

Appellant contends further that the admission of the unsigned statement written by the F.B.I. agent at the time he conferred with the appellant in jail in Duluth at appellant's request and known in this trial as Exhibit 8, was error, asserting that the memorandum or statement was evidence of prior crimes and was used to show a propensity to commit crime. The record indicates, however, that the meticulously careful trial judge cautioned the jury at the time Exhibit 8 was admitted that it was being admitted only for the limited purpose of showing knowledge and intent and lack of mistake. Furthermore, the jury was again cautioned as to the limited purpose of Exhibit 8 at the close of the case.

Admitting evidence of other crimes is generally regarded as being highly prejudicial because it may suggest to the jury that the defendant has a criminal mind or an unusual propensity to commit crime. Evidence of other criminal acts may, however, become relevant and admissible where such evidence tends to determine certain issues in the case tried. As was said by Judge McGowan in Drew v. United States, 1964, 118 U.S. App.D.C. 11, 331 F.2d 85, 90:

"Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."

See, also, Wakaksan v. United States, 8 Cir., 1966, 367 F.2d 639, 645, certiorari denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L. Ed.2d 341; Buatte v. United States, 9 Cir., 1965, 350 F.2d 389, 395; Kempe v. United States, 8 Cir., 1945, 151 F.2d 680, 688. It is apparent from the record here that the unsigned statement, while it contained evidence or inferences of other like crimes, was admitted to show knowledge, intent and lack of mistake on appellant's part and that the trial judge gave appropriate limiting instructions to the jury concerning the use of such evidence.

Appellant also attacks the admissibility of Exhibit 8 by contending that it was a mere memorandum of the F.B.I. agent and not a statement of the appellant himself. True enough, appellant refused to sign the statement but there was unrefuted testimony that appellant did acknowledge the statement to be true and correct. Certain mistakes were pointed out by the appellant and deletions and additions to the unsigned

statement were made at his direction. In Wong Sun v. United States, 1963, 371 U. S. 471, at page 491, 83 S.Ct. 407, at page 419, 9 L.Ed.2d 441, the Supreme Court stated:

"* * * The fact that the statement was unsigned, whatever bearing this may have upon its weight and credibility, does not render it inadmissible; * * *."

Here the trial judge carefully held a hearing in chambers to determine the voluntariness of the statement and found that it was indeed voluntary. This finding or holding was not attacked by the appellant. The record is void of any objection to the statement as not being the appellant's. In view of the Supreme Court's statement in *Wong Sun*, supra, appellant's contentions in this regard were for the jury.

Appellant's final contention is that the testimony relating to the closing of his checking account in the Sturgis bank, his deposits in that bank and the receipt of two other drafts by that bank was erroneously admitted because such evidence was irrelevant and immaterial to any of the issues in this case. Exhibit 1 was drawn on the Sturgis bank and since Exhibit 2 was made payable through the Sturgis bank, although designated a "receipt" by the appellant, evidence of appellant's financial affairs at that banking institution is relevant to show intention. Appellant gave Bieber documents indicating that he would pay Bieber $1,650 through the offices of the Sturgis bank. Testimony to the effect that at the time the promise of payment was made appellant had no checking account at the Sturgis bank, that he had made only three relatively small deposits at that bank, and lost his checking account because of his constant overdrawing, and that two drafts similar to the one involved here had been received by the bank tends to establish the intent of the appellant and lack of mistake on his part. These are obviously relevant issues in determining whether the car was obtained by appellant through false pretenses. As this

court stated in *Landwehr*, supra, at page 219 of 304 F.2d:

"It is well settled that a trial court has 'a measure of discretion in allowing testimony which discloses the purpose, knowledge, or design of a particular person.' Glasser v. United States, 1942, 315 U.S. 60, 81, 62 S.Ct. 457, 470, 86 L.Ed. 680; Blodgett v. United States, 8 Cir., 1947, 161 F.2d 47, 51, and cases cited therein. Here it is true the intent to procure the automobile under false pretenses was a vital part of the government's case and the trial· court did have wide discretion in the admission of evidence tending to establish that intent."

Affirmed.