Mitchell B. CULP

v.

Charles DEVLIN.

Civ. A. No. 77–44.

United States District Court,
E. D. Pennsylvania.

Feb. 16, 1978.

Wilbur Greenberg, Robert A. Davitch, Philadelphia, Pa., for plaintiff.

Sheldon L. Albert, Drew P. D'Angelo, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The discovery proceedings in this civil rights suit against Philadelphia police officers, the City of Philadelphia, the Mayor and the Police Commissioner of the City, have become very complicated and have posed many problems to the parties and this Court. During the course of discovery, this Court has ruled on various motions to compel, motions for sanctions and motions for protective orders. Despite these rulings, the parties now have submitted motions for reconsideration of previous court orders and additional motions for sanctions. To clarify its position and give the parties further direction, the Court finds this Memorandum is necessary. The Court will outline the history of this litigation, and then address the merits of the three outstanding discovery motions.

### History of the Litigation

In this case, the plaintiff alleges that he was a victim of police brutality, and is suing the police officers allegedly involved in the incident, the City of Philadelphia, Mayor Frank L. Rizzo and Police Commissioner Joseph O'Neill. On May 25, 1977, the Court ruled upon the defendants' Motion to Dismiss and the plaintiff's Motion to Amend his complaint. As this Court found that it had jurisdiction over a municipality for claims based on the Constitution under 28 U.S.C. § 1331 when the amount in controversy requirement was satisfied, the City's Motion to Dismiss for lack of jurisdiction was denied. Nonetheless, the City, the Mayor and the Police Commissioner moved to dismiss the plaintiff's allegations of negligent supervision and training and this

Court granted that motion because it found that the facts supporting plaintiff's claims were not pleaded with specificity. With regard to the Motion to Amend the plaintiff's complaint, the Court granted the plaintiff's Motion so as to allow a claim against the City under the doctrine of respondeat superior; however, the Motion to Amend the Complaint so as to allow a claim against the Mayor and the Police Commissioner to go forward under the respondeat superior doctrine was denied, as the Mayor and the Police Commissioner were not the police officers' employers. *See Culp v. Devlin*, 437 F.Supp. 20 (E.D.Pa.1977). Although the plaintiff's claims of negligent supervision and training were dismissed on May 25, 1977, the plaintiff subsequently amended his complaint, specifically outlining the factual allegations supporting his negligent supervision and training claims against the City, the Mayor, and the Police Commissioner and, therefore, on July 6, 1977, this Court denied defendant's Motion to Dismiss these claims. Thus, the police officers, the City, its Mayor and Police Commissioner remained defendants in this action.

After the Motions to Dismiss were ruled upon, the parties commenced discovery. The plaintiff served all defendants with interrogatories and requests for documents; defendants Rizzo and O'Neill objected to the plaintiff's discovery requests on the ground that they had already filed a summary judgment motion with the Court. When the summary judgment motion was denied, the Mayor and the Police Commissioner then filed a further objection to plaintiff's discovery requests, asserting that the information requested was privileged, confidential, immaterial, irrelevant and propounded for the purpose of harassment. The City and the defendant Devlin failed to respond timely to the discovery requests. Given the responses and non-responses of the defendants, the plaintiff filed a Motion for Sanctions. By that time the plaintiff also had noticed the depositions of the Mayor and the Police Commissioner and these defendants had filed a Motion for a Protective Order. The Court on October 25, 1977, denied the Motion for a Protective Order

finding that (1) the defendants had not shown that their depositions would cause undue annoyance and oppression, (2) their depositions might lead to the discovery of relevant and admissible evidence, and (3) the defendants' mere allegations that they did not have personal knowledge of the incident were insufficient to allow a protective order to be issued. Although defendants Rizzo and O'Neill opposed plaintiff's Motion for Sanctions, in part, on the ground that they were not parties to this action, this Court found to the contrary, reiterating its earlier decisions, and ordered *inter alia*, that the defendants file answers to interrogatories and produce documents requested by the plaintiff within ten (10) days.

While the Court anticipated that its October 25, 1977, Order would clearly instruct the parties as to their obligations and responsibilities and that discovery would then proceed smoothly, such was not the case. On November 25, 1977, the plaintiff filed his Second Motion for Sanctions claiming that the defendants had failed to comply with the Court's earlier Order. Defendant O'Neill had failed to sign and verify the answers to his interrogatories. Defendant Rizzo had not filed his interrogatories within the time limits established by the Court's October 25, 1977, Order. And plaintiff contended that defendants Rizzo and O'Neill failed to make adequate responses to plaintiff's interrogatory I.5. Thus, upon consideration of plaintiff's Second Motion for Sanctions the Court on December 16, 1977, ordered defendant O'Neill to supply the plaintiff and the Court signed copies of his answers to plaintiff's interrogatories and to attach an affidavit to those interrogatories verifying the validity of the answers. In addition, as the defendants had not specifically objected to answering plaintiff's interrogatory I.5 when they first responded to the plaintiff's interrogatories, had put forth a blanket refusal to answer any of the interrogatories at that time in violation of the requirements of Rule 33 of the Federal Rules of Civil Procedure and then had disregarded the October 25, 1977, Order to re-

spond fully to interrogatories, this Court ordered defendants Rizzo and O'Neill to answer plaintiff's interrogatory I.5 fully. Finally, as the plaintiff appeared to have invested substantial time and expense in seeking the defendants' compliance with this Court's Order, the Court, under Rule 37 of the Federal Rules of Civil Procedure, ordered the defendants to pay the plaintiff $350.00 as reasonable expenses incurred in preparing the Second Motion for Sanctions.

On December 22, 1977, the defendants' attorney made oral application to this Court for reconsideration of the December 16, 1977, Order. Defendants' attorney claimed that by requiring defendants Rizzo and O'Neill to respond to plaintiff's interrogatory I.5, these defendants would be required to produce thousands of documents and that such production would be overly burdensome to the defendants. Plaintiff's interrogatory I.5 is a follow-up question to plaintiff's interrogatory I.4 which reads:

> I.4 State whether any incidents of alleged police brutality and/or abuse of a police officer's lawful authority were ever made known and/or reported to you in your official capacity prior to January 28, 1975?

Having answered I.4 affirmatively, defendants Rizzo and O'Neill, by reason of the Court's December 16, 1977, Order, were compelled to answer I.5 which reads:

> I.5 If your answer to the prior Interrogatory is yes, state the following:
>
> (a) how many times, to the best of your knowledge were incidents of alleged police brutality and/or abuse of a police officer's lawful authority reported to you in your official capacity prior to January 28, 1975;
>
> (b) state, in as much detail as possible, the nature of each such specific incident that was reported to you in your official capacity, prior to January 28, 1975, including the name, badge and/or identification number of the police officer who was alleged to have either abused his lawful authority and/or committed an act of brutality;

> (c) state the name, badge and/or if applicable, the identification of each person who reported each such incident to you;
>
> (d) state the date that each such incident was reported to you, and the date that each such incident allegedly occurred. Also state the name of each person who so charged each police officer with abuse of his lawful authority and/or with police brutality;
>
> (e) state what action, if any, you took as a result of the reporting of each such incident to you, and also state what action you were authorized or obligated to take, if any, as a result of the reporting of each such incident.

Defendants' attorney claimed that although the plaintiff's attorney agreed that the interrogatory could be answered by supplying the relevant documents from which the answer to interrogatory I.5 could be deduced, such production would be overly burdensome to the defendants and would not lead to relevant information. It appeared to the Court that requiring the defendants to produce all the documents that would be needed to adequately respond to the interrogatory would burden the defendants unduly; therefore, the Court amended its Order so as to require the defendants to respond to interrogatory I.5 as it related to the individual officers involved in the incident alleged in the complaint. This oral modification of the December 16, 1977, Order was reflected in the Court's Order of January 3, 1978.

*Present Motions Before the Court*

At this time, three discovery motions are before the Court. On January 13, 1978, plaintiff filed a Motion for Reconsideration of the January 3, 1978, Order. Defendant filed on January 17, 1978, a Motion for Reconsideration of the Court's Order of October 25, 1977. And plaintiff has also submitted a Third Motion for Sanctions.

This Court has decided to grant Plaintiff's Motion for Reconsideration of the January 3, 1978, Order and to order the defendants Rizzo and O'Neill to fully and adequately respond to plaintiff's interroga-

tory I.5. While this involves the reconsideration of a decision that already has been reconsidered once, the Court finds that it is necessary that the interrogatory be answered. It is true that this Court has found that the production of the documents necessary to answer interrogatory I.5 will be burdensome to the defendants; however when weighed against the plaintiff's need for this information to establish his case, that burden placed upon the defendants does not seem undue. The plaintiff's Motion for Reconsideration outlines the importance to their case of the information that they seek in interrogatory I.5, and the Court has concluded that without this information it would almost be impossible for the plaintiff to begin to establish his claims. As has been said, the plaintiff claims that defendants Rizzo and O'Neill were negligent in failing to give the defendant officers adequate training and supervision on avoiding police brutality. The defendants are also charged with negligence for their failure to test police officers for racial prejudice, violent propensities and emotional instabilities. To establish that the defendants were negligent in their failure to establish a testing, training and supervision program that would have been directed to curbing police brutality, plaintiff argues that it is necessary to show that the defendants knew or should have known of the need for such a program and that they failed to meet that need. Plaintiff contends that the "knowledge" element of this negligence claim can be established by producing evidence that the defendants' knew that many police officers were engaged in acts of police brutality and that plaintiff's interrogatory I.5 is directed to gaining such evidence.

After reviewing the answers to interrogatories that have been submitted thus far, it is clear that the plaintiff is well on his way to showing that the defendants did not have the program which plaintiff claims they should have had. For example, defendant O'Neill responded "no" to plaintiff's interrogatory I.13 which asked whether there were any internal police procedures designed to test the racial prejudices, emo-

tional instabilities and violent propensities of police officers. It appears, then, the fact that the plaintiff will have more difficulty establishing at trial is that the defendants should have established a testing, training and supervision program. To prove this element, the Court agrees that it would be relevant to establish that the defendants knew that police officers were being charged with acts of brutality and that a pattern of illegal activities existed within the police department. *See Norton v. McKeon*, 444 F.Supp. 384 (E.D.Pa.1977). Although the Court will not comment on the other possible avenues available to the plaintiff to establish his case, it does seem then that the information sought by plaintiff's interrogatory I.5 is relevant and perhaps crucial to his case. Therefore, although producing the information sought by interrogatory I.5 may impose a heavy burden upon the defendant, given the importance of this information to plaintiff's case, the discovery policies of the Federal Rules of Civil Procedure demand that the defendant must be made to bear this burden and answer interrogatory I.5. *See Alexander v. Rizzo*, 50 F.R.D. 374 (E.D.Pa. 1970).

█ The defendants ask the Court to reconsider its decision of October 25, 1977, which denied defendants' Motion for a Protective Order. Defendants Rizzo and O'Neill requested a protective order to prevent their depositions. Two reasons require denial of defendants' Motion for Reconsideration. First, under Rule 37 of the Local Rules of the United States District Court for the Eastern District of Pennsylvania, motions for reconsideration should be filed within ten days after the order was entered. Thus, this motion is procedurally defective. Secondly, the Court still finds that the depositions are necessary in order to give the plaintiff the opportunity to discover relevant evidence. The defendants claim that as discovery has shown that no prior complaints were filed against the officers involved in the incident, defendants Rizzo and O'Neill cannot have been negligent in their failure to prevent these offi-

cers from committing acts of police brutality; therefore, the defendant argues that as discovery has proven these defendants innocent of any negligence, their depositions would be burdensome and useless. The problem with defendants' argument is that it disregards the theories underlying the plaintiff's case. The plaintiff is claiming that the defendants' knowledge that other officers committed acts of police brutality that had not been curbed by any programs the defendants established charged the defendants with a duty to develop a program to prevent such police abuse and that the failure to fulfill this duty which might have saved the plaintiff from being a victim of police abuse was negligent. In addition, the plaintiff contends that these defendants were negligent in making public and private statements concerning police conduct that encouraged police brutality. During deposition, the plaintiff would be able to question the defendants in both these areas and such questions might lead to the discovery of relevant evidence. Although this Court recognizes that the defendant Mayor and Police Commissioner are busy officials and such depositions might burden their schedules, these considerations do not outweigh the importance of allowing discovery to go forward. *See Hadnott v. Amos,* 291 F.Supp. 309 (M.D.Ala.1968) [court refused to quash subpoena of Governor to appear for deposition, even though Governor claimed that he was busy with important executive functions]. Therefore, it will be necessary to deny the defendants' Motion. Although the defendants hold important public offices, when they come into federal court they must be treated like all other parties. Justice in the judicial system requires equality of treatment and equal application of the discovery rules. If any other individual would be required to attend a deposition under these circumstances, so must these defendants be made to appear for oral examination unless compelling circumstances direct otherwise. Therefore, it will be necessary to deny the de-

fendant's Motion as relevant evidence may be obtained through deposition.

Finally, this Court reaches the plaintiff's Third Motion for Sanctions. Plaintiff has filed this motion seeking a default judgment against defendants Rizzo and O'Neill on the ground that they have failed to comply with the Court's order in the following respects: (1) that defendant O'Neill was to have filed and served verified answers to his interrogatories by December 28, 1977, and did not do the same until January 3, 1978; (2) the requirement that the defendants pay the plaintiff $350.00 as reasonable expenses has not yet been satisfied; and (3) defendants have not filed signed and verified answers to interrogatory I.5. The Court finds that the defendants have failed to comply with the Court's order in the above-mentioned respects. Such disregard of the Court's direction is a serious matter, for the defendants should not believe they can avoid compliance with a court's directions. In addition, the Court entered the orders in this case to allow the plaintiff to obtain the information he seeks in order to establish his case and to expedite the discovery process; this disobedience to the Court's orders results in disruption not only to the plaintiff's case but to the business of this Court. Nonetheless, the Court believes that imposing the sanction of default judgment at this time would be a very severe penalty for the violations of the Court's order. Rather, the Court will give the defendants one more opportunity to prove that they are attempting to comply with the Court's orders in good faith. However, it should be stated that good faith will no longer be sufficient and that the Court will demand in the future strict compliance with its orders. Thus, the Court will deny the Motion for Sanctions and order the defendants again to do that which they have not yet done. Any failure to comply with the Order entered today will indeed lead to imposition of severe sanctions.

It is the hope of this Court that the Order and Memorandum Opinion entered now will allow for discovery to proceed without fur-

ther delays and problems. While the Court is here to aid the parties during discovery, the Court now expects that sufficient aid has been rendered to allow for this case to proceed to its merits.