Alexander CRAWFORD

v.

Paul DOMINIC, William O'Neill, William Murphy, Joseph O'Neill, John Doe, Richard Roe, various unknown Individuals, and the City of Philadelphia.

Civ. A. No. 76–1470.

United States District Court, E. D. Pennsylvania.

April 26, 1979.

James B. Lieber, Community Legal Services, Inc., David Rudovsky, Philadelphia, Pa., for plaintiff.

Paul R. Sacks, Sheldon L. Albert, City Sol., Thaddeus J. Bartowski, Asst. City Sol., Philadelphia, Pa., for Paul Dominic, David O. Minic, Wm. O'Neill, Wm. Murphy, Joseph F. O'Neill and City of Philadelphia.

POLLAK, District Judge.

I.

Plaintiff Alexander Crawford has sued Officer Paul Dominic, Officer William O'Neill, Captain William Murphy, Police Commissioner Joseph O'Neill (all of the Philadelphia police), several other individuals whose names and titles are unknown, and the City of Philadelphia. He alleges that Officer Dominic, with Officer O'Neill looking on, shot him (Crawford), giving rise to claims under 42 U.S.C. § 1983 and under state law. He alleges that Captain Murphy and Commissioner O'Neill violated his rights by improperly supervising the officers involved in the shooting. The City is sued for the acts of its agents.

Plaintiff moved to discover a large number of documents in the possession of defendants. Last spring, Judge Fogel granted all but two of the requests. The two are:

8. Any and all documents pertaining to Officer Paul Dominic regarding

(a) disciplinary proceeding(s)

(b) citizens complaint(s)

(c) reports and investigations of previous gun firings.

9. Any and all documents pertaining to Officer William O'Neill regarding

(a) disciplinary proceeding(s)

(b) citizens complaint(s)

(c) reports and investigations of previous gun firings.

Judge Fogel did not place on the record his reasons for not granting discovery of these items.

Plaintiff now renews his motion for discovery of these documents, arguing that they may demonstrate that the officers had a propensity for violence and that defendant supervisors (Commissioner O'Neill and Captain Murphy) and the City knew or should have known of this propensity and did nothing to protect citizens from the danger the officers may have presented. Defendants argue that the documents are protected by executive privilege, and that plaintiff's renewed motion is barred by failure to comply with the ten-day time limit of Local Rule 37(a) relating to motions for reargument.[1]

## II.

■ The argument that plaintiff is time-barred takes the ground that the renewed motion for discovery of the documents in question should have been filed within ten days of the entry of Judge Fogel's order of last spring. But the argument attributes to Judge Fogel's order a negative cast which may, but also may not, have been intended. The order granted discovery with respect to a number of requested items, but eliminated (by reference to the numbers of two numbered paragraphs in plaintiff's motion papers) the items covered by plaintiff's renewed motion, now before us.

1. Rule 37(a) provides as follows:

> Motions for reargument shall be filed and served within ten (10) days after the entry of the judgment, order or decree upon which reargument is requested. Such motions shall be accompanied by memoranda setting forth with particularity the matters or decisions which counsel believe the Court should reconsider.

On this record we know that Judge Fogel was not persuaded that discovery of these items was then in order. But we do not know why: we do not know, for example, whether Judge Fogel believed these documents to be *per se* privileged, or whether he simply concluded that plaintiff could not demonstrate the need for those documents until he had examined the other materials required to be disclosed. In this state of ambiguity as to what Judge Fogel did or did not decide, I think that plaintiff is entitled to have his motion addressed on its merits.

## III.

"[T]he federal rules of discovery [are] meant to insure that no relevant fact remain hidden." *Wood v. Breier,* 54 F.R.D. 7, 13 (E.D.Wis.1972). Although certain claims of privilege are allowed under these rules and F.R.Evid. 501, in a civil rights action involving asserted official misconduct a claim that relevant evidence is privileged "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Id.*

All the cases recognize, however, that there will be some situations in which police investigative and personnel files will need to be kept secret to protect some public interest, and most recognize that the decision whether to suppress certain documents must be made after balancing the need for their discovery against the particular reasons advanced to support confidentially. See, e. g., *Swanner v. United States,* 406 F.2d 716, 719 (5th Cir. 1969); *Jabara v. Kelley,* 75 F.R.D. 475 (E.D.Mich.1977); *Wood v. Breier, supra.*[2] While there is no

2. A few cases suggest that *per se* rules are more appropriate than a balancing approach, but do not agree on the proper rule. *Boyd v. Gullett,* 64 F.R.D. 169, 178 (D.Md.1974) (police files of ongoing investigations only are privileged); *Kott v. Perini,* 283 F.Supp. 1 (N.D. Ohio 1968) (very little in police files discoverable); *City of Los Angeles v. Superior Court,* 33 Cal. App.3d 778, 109 Cal.Rptr. 365 (2d Dist. 1973) (same).

definitive list of considerations to be used in determining whether any particular piece of evidence should be discovered, Judge Becker has set out a list of ten factors, many of which will be relevant to most cases:

> In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973).

 The weightiest of these factors would appear to be the one Judge Becker reserves for last: the importance of the information to the plaintiff's case. See *Culp v. Devlin*, 78 F.R.D. 136, 139–41 (E.D. Pa.1978) (Newcomer, J.). Plaintiff asserts, and defendants do not deny, that the material plaintiff seeks to discover is vital to his case against Commissioner O'Neill and Captain Murphy, the supervisors of the officers allegedly involved in the shooting. Under Section 1983 (of Title 42), the extent of supervisors' knowledge of and participation in the acts of their subordinates determines the scope of their liability for their subordinates' action. See, e. g., *Taylor v. Gibson*, 529 F.2d 709, 716 (5th Cir. 1976); *Fisher v. Volz*, 496 F.2d 333, 349–50 (3d Cir. 1974). The knowledge of its supervisory and policymaking employees may also bear on the asserted liability of the City under Section 1983. See *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2041 and n. 66, 56 L.Ed.2d 611 (1978). The extent of supervisors' knowledge of and participation in the acts of subordinates is also the critical consideration in determining supervisory liability under the pendent state causes of action. *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293, 295 (1978). Neither plaintiff nor defendants suggest any other source for information which would shed light upon the supervisors' possible responsibility here. See the ninth of the factors listed by Judge Becker, *supra*, and *City of Los Angeles v. Superior Court*, 33 Cal.App.3d 778, 109 Cal.Rptr. 365 (2d Dist. 1973) (discovery of police disciplinary files denied where evidence from other sources might tend to shed light on supervisors' culpability).

By contrast, defendants have not yet shown any compelling, legally cognizable reason for denying discovery of these files. They assert that the documents plaintiff seeks are protected by "executive privilege."

"Executive privilege is founded upon the public interest in the effective performance of the constitutional powers and duties assigned to the Executive Branch." *Nixon v. Sampson*, 389 F.Supp. 107, 148 (D.D.C.1975). Federal courts recognize that the privilege is not confined to Presidents and federal department heads, but also, in some instances, may protect state and even municipal executive officials from disclosure of documents in their official custody. See *Frankenhauser v. Rizzo, supra; Wood v. Breier, supra.*

 Because the privilege belongs to government (*Nixon v. Sampson, supra,* at 107), rather than to individual office-holders in their personal capacity, and because the

privilege is designed only to protect documents whose disclosure would so seriously hamper the operation of government that they should be kept secret notwithstanding their utility, or even indispensability, in establishing a litigant's claim, courts will frequently require any assertion of the privilege to be made by the senior official clothed 'with the privilege, and not merely by that official's (or, *a fortiori*, some other litigant's) attorney. *United States v. Reynolds*, 345 U.S. 1, 7–8 and n. 19, 73 S.Ct. 528, 532 and n. 19, 97 L.Ed. 727 (1953), citing *Firth Sterling Steel Co. v. Bethlehem Steel Co.*, 199 F. 353 (E.D.Pa.1912); *Carter v. Carlson*, 56 F.R.D. 9 (D.D.C.1972); *Smith v. FTC*, 403 F.Supp. 1000 (D.Del.1975).[3] This insures that each claim of executive privilege has received the personal attention of the official whose department's operations may be affected by a decision to make documents public.

Although it is the attorney for defendants who has made the claim of privilege in this case, I will not deny the claim for that reason. A court should be wary of dismissing possibly meritorious claims for such a technical reason, especially where important interests of the public at large may be involved. *Smith v. FTC*, 403 F.Supp. at 1016–18. My decision, discussed below, is that defendants have not yet shown any compelling reason for the nondisclosure of the documents which plaintiff seeks. It is possible, however, that Commissioner O'Neill, as head of the Philadelphia Police Department, may be able to establish compelling reasons for not turning over certain of the documents. And I will therefore accord the Commissioner the opportunity to try to make such a showing, if he is so minded.

■■ Clearly, the public has the strongest interest in maintaining the confidentiality of police files when those files concern an ongoing criminal investigation. E. g., *Boyd v. Gullett*, 64 F.R.D. 169, 178 (1974) (citing cases). In order to perform their duty of detecting crime and apprehending criminals, the police must often work in the most closely guarded secrecy. It is where the proper work of a government agency depends upon secrecy that claims of executive privilege will be looked upon with greatest favor. See *United States v. Reynolds, supra; Mackey v. United States*, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965) (error to deny discovery of closed police files); *Boyd v. Gullett, supra*. There is no assertion by defendants, however, that the files sought by plaintiff involve any ongoing police investigations.

■ Some police files may contain "information which would reveal, or tend to reveal, the identity of a informer [or of] persons, not technically informers, who have volunteered information to the government." *Jabara v. Kelley*, 75 F.R.D. 475, 495 (E.D.Mich.1977). The public interest in preserving the anonymity of such persons— whose effectiveness, and perhaps even whose lives may be at risk—may justify the deletion of identifying information from files sought in discovery. *Id.* Moreover, defendants argue that if discovery of these files is granted, assurance of confidence made by citizens and police officers who gave information may be breached. And breaches of this sort may, so it is argued, deter future disclosures of police misconduct by sources fearful that their names will later be made public.

I do not accept the general proposition that citizens or fellow police officers will be less likely to give information concerning a police officer's conduct because in a few instances that information may be used in a later lawsuit. As Judge Becker has stated:

> To the extent that F.R.Evid. 501 (the current privilege provision) reflects a congressional intent to continue the development of prior common law privilege rules, I must conclude that the requirements of *Reynolds* and *Carter* are still good law.

---

3. Judge Becker's opinion to the contrary in *Frankenhauser v. Rizzo, supra*, was based on the provision of proposed Federal Rule of Evidence 509, which would have allowed attorneys to make claims of executive privilege except in national security cases. Since the decision in *Frankenhauser*, Congress has deleted Rule 509.

First, we do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police. Neither do we perceive any impact of the disclosure of factual statements surrounding an investigation of a shooting upon persons who gave them. Police officers are of course willing to cooperate, and we believe that the average citizen is also willing to cooperate with law enforcement officials.

*Frankenhauser v. Rizzo*, 59 F.R.D. at 344. Accord, *Boyd v. Gullett, supra.* I recognize, however, that there may be occasional instances when the confidentiality of a particular name may be vital, either to carrying forward other police investigations or to protecting a person who has given information.

If Commissioner O'Neill wishes to advance a claim of executive privilege, the claim should be addressed with particularity to each document as to which the Commissioner asserts an entitlement not to disclose, and should as to each such document state the reason for asserting the privilege. The documents should then be produced to the Court for an *in camera* inspection at which I will decide whether the document should be discovered, discovered in modified form, or wholly protected from disclosure to plaintiff. This type of *in camera* inspection procedure has frequently been used to protect the interests of plaintiffs and of municipalities in so-called "police misconduct" cases. E. g., *Frankenhauser v. Rizzo, supra; Jabara v. Kelley, supra.* Cf. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (*in camera* inspection of presidential tapes); *United States v. Reynolds, supra* (some military secrets too sensitive for even *in camera* inspection).

■ Defendants also argue strongly that the materials plaintiff seeks should be suppressed or edited because they may contain supervisory evaluations of the conduct of officers Dominic and William O'Neill as well as reports concerning the conduct of the officers. Many of the cases reflect a concern that supervisors be allowed to evaluate their subordinates candidly, and thus frequently refuse discovery of evaluative material even where discovery of reports by citizens and police of the underlying facts of cases is allowed. E. g., *Swanner v. United States, supra; Jabara v. Kelley, supra; Frankenhauser v. Rizzo*, 59 F.R.D. at 344–45.

However, to apply in this case a blanket rule exempting supervisory evaluation from discovery might well bar jury scrutiny of highly relevant evidence which cannot be adequately developed in any other way: Supervisory evaluations may be the best evidence available in this case of the state of mind of defendant supervisors, and of other agents of the city and the police department responsible for personnel or policy decisions. Even if the evaluations were not made by defendant supervisors, such evaluations are relevant to determining the information that was available to them. For this reason, I am persuaded that supervisory evaluations should not be shielded from discovery unless, as to each such assertedly privileged evaluation, the Commissioner can make the strong showing that must be made before any other document is refused discovery. Compare *Carter v. Carlson*, 56 F.R.D. 9 (D.D.C.1972). Wherefore, as to any claims of privilege with respect to supervisory evaluations, use will be made of the *in camera* procedure.