**Anomi R. URSETH, Plaintiff,**

v.

**CITY OF DAYTON, et al., Defendants.**

No. C 3–84–103.

United States District Court, S.D. Ohio, W.D.

March 19, 1986.

Neil F. Freund, Dayton, Ohio, for defendant City of Dayton and Broomfield.

Victor A. Hodge, Dayton, Ohio, for defendants Reynolds and Holland.

Dennis Lieberman, Dayton, Ohio, for defendants Navarre and Chabali.

Philip B. Herron, Dayton, Ohio, for defendant Varvel.

Jeffrey Hazlett, Dayton, Ohio, for defendant Shows.

John Adams, Kettering, Ohio, William Havemann, Dayton, Ohio, for defendant City of Kettering.

Howard Krisher, Dayton, Ohio, for defendants Czisma and Shaw.

E. John Wist, A. Melvin Kemmer, Tipp City, Ohio, Irving Saul, Dayton, Ohio, for plaintiff.

William Thornburgh, Dayton, Ohio, for plaintiff Price.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA (DOCS. # 71, 74); PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND INSPECTION SUSTAINED (DOC. # 84); IMPOSITION OF PROTECTIVE ORDER

RICE, District Judge.

This case comes before the Court for resolution of certain discovery impasses which have arisen between the parties.

The first of these discovery impasses arises from Plaintiff's subpoena *duces tecum* upon Jose Lopez, the Special Prosecutor of the Special Grand Jury which investigated and then indicted Defendants Varvel, Navarre, Chabali, Shows, Holland, Reynolds, Czisma, and Shaw. Defendants City of Dayton (Dayton) and Tyree Broomfield have filed a Motion for Protective Order regarding the deposition of Jose Lopez/Motion to Quash Subpoena. (Doc. # 71). Mr. Lopez has filed a similar motion. (Doc. # 74).

The second and related discovery impasse stems from Dayton's refusal to produce certain items and documents for Plaintiff on the basis of the executive privilege covering internal affairs files. The

subject of this privilege has been briefed both in conjunction with the attempted deposition of Mr. Lopez as well as in Plaintiff's Motion to Compel. (Doc. # 84).

(A) *Grand Jury Secrecy.*

Defendants Dayton and Broomfield, as well as Special Prosecutor Lopez, contend that Plaintiff's subpoena *duces tecum* upon Mr. Lopez is an attempt to violate the policy of grand jury secrecy. Defendants contend that the materials which Plaintiff seeks are documents which were provided to Jose Lopez due to his role as Special Prosecutor, and that Plaintiff must demonstrate a "compelling need" to take the deposition and to obtain any of the documents which she seeks from the Special Prosecutor. Plaintiff contends that the Special Grand Jury's investigation is highly relevant to her causes of action under 42 U.S.C. § 1983 and her pendant wrongful death action in this Court. Plaintiff argues that the only aspect of grand jury proceedings which are shrouded in secrecy is the actual testimony of witnesses before the grand jury, testimony which she specifically excluded from her document request of Mr. Lopez.

(1) *Applicable Law.*

Federal Rule of Criminal Procedure 6(e)(2) provides as follows:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

Rule 6(e)(3)(C)(i) is an exception to this general rule of secrecy, providing that disclosure otherwise prohibited by Rule 6(e)(2) may be made "when so directed by a court

248

preliminarily to or in connection with a judicial proceeding."

Rule 6(e)(2) represents the main statutory expression of the common presumption that grand jury proceedings should remain secret. *United States v. Jeter,* 775 F.2d 670, 675 (6th Cir.1985). The federal courts have applied Rule 6(e)(2) to requests in civil cases for disclosure of grand jury materials. *United States v. Short,* 671 F.2d 178, 186 (6th Cir.1982), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982) (discussing *Douglas Oil Company v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1978)). As noted *supra,* Plaintiff has advanced a § 1983 claim in this Court, and has also invoked this Court's pendant jurisdiction for a state wrongful death cause of action. This Court is confident that the federal approach to disclosure of grand jury materials should prevail in this case, which involves the investigations of a state special grand jury. Not only is a federal civil rights action involved, but adoption of a state disclosure standard would allow for the possibility that abuses in the state grand jury process could be cordoned off from the probe of federal civil rights actions, depending on the restrictiveness of the state's disclosure rule.

Plaintiff's suggestion in her brief, which cites the Ohio Supreme Court's decision in *Petition for Disclosure of Evidence Presented to Franklin County Grand Juries in 1970,* 63 Ohio St.2d 212, 407 N.E.2d 513 (Ohio 1980), is that Ohio provides a standard of grand jury disclosure which is applicable in this matter and which perhaps differs from the federal standard. Even were this Court to conclude that state law should guide the instant dispute as to grand jury secrecy, the Court notes that Ohio Rule of Criminal Procedure 6(E), which governs disclosure of grand jury materials, contains language identical in its key parts to Federal Rule 6(e)(2).[1] Moreover, the Ohio Supreme Court indicated in *Petition,* without providing a construction of the Ohio rule, that grand jury disclosures ordered by the Ohio courts are to be governed by standards identical to the disclosure standards imposed by the federal courts under Federal Rule of Criminal Procedure 6(e)(2).

The Ohio Supreme Court's holding in *Petition* was that grand jury transcripts may be disclosed, under certain circumstances, in civil cases. In arriving at its holding, the court observed:

In adopting this rule [the rule that generally grand jury proceedings are secret, except in certain circumstances], we have relied heavily on the United States Supreme Court's decision in *Pittsburgh Plate Glass Company v. United States* (1959), 360 U.S. 395 [79 S.Ct. 1237, 3 L.Ed.2d 1323].... *Pittsburgh Plate Glass* involved Fed.R.Cr.P. 6(e). In relying on *Pittsburgh Plate Glass,* this court recognized that courts in this state, under their inherent powers, have essentially the same control over grand juries as federal courts have under Fed.R.Cr.P. 6(e). As a consequence, we look to the United States Supreme Court's decisions regarding Fed.R.Cr.P. 6(e) for guidance in the case at bar.

63 Ohio St.2d at 216, 407 N.E.2d at 517 (footnote omitted). From the Ohio Supreme Court's decision in *Petition,* then, it would appear that Ohio's approach to secrecy would not deviate from, or would likely be substantially similar to, the feder-

1. Ohio Rule of Criminal Procedure 6(E) provides in relevant part:

Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of the grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

al approach under Federal Rule of Criminal Procedure 6(e)(2). The Court also notes the Ohio Supreme Court's lack of discomfort in *Petition* with the prospect of a federal court ordering disclosure of state grand jury materials, provided that the federal court was in a position to define the need for disclosure. 63 Ohio St.2d at 220, 407 N.E.2d at 519.

(2) *"Matters Occurring Before the Grand Jury."*

Rule 6(e)(2) provides a blanket rule against disclosures of "matters occurring before the grand jury." The federal courts which have addressed the scope and definition of such "matters" have been guided by the rationales for maintaining grand jury secrecy, such is the explanation given by the United States Supreme Court in *Douglas Oil:*

> For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

441 U.S. at 222, 99 S.Ct. at 1674.

Based on such rationales, Rule 6(e)(2) protects from disclosure the essence of what takes place in the grand jury room. *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3rd Cir.1980). Obviously, transcripts of actual proceedings in the grand jury room reveal precisely what occurred before the grand jury. In order to fully effectuate the objectives of the grand jury process, however, consideration must be given to those types of information which would reveal aspects of the grand jury process and the factors which may lead to the return of indictments. "Matters occurring before the grand jury" has been construed for this reason to protect against disclosure of the "identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors and the like." *Securities and Exchange Commission v. Dresser Industries*, 628 F.2d 1368, 1382 (D.C.Cir.1980) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

In *Fund for Constitutional Government v. National Archives*, 656 F.2d 856 (D.C.Cir.1981), plaintiffs requested a number of documents from the Watergate special prosecutor under the Freedom of Information Act (FOIA). Once the court determined that Rule 6(e)(2) provided an exception to disclosure under the FOIA, the issue became whether the documents sought from the Watergate special prosecutor [2] were "matters occurring before the grand jury" within the scope of Rule 6(e)(2). The Fund for Constitutional Government had sought from the special prosecutor the following information from investigations which had been completed: "naming or identifying grand jury witnesses; quoting or summarizing grand jury testimony; evaluating testimony; discussing the scope, focus and direction of the grand jury investigation; and identifying documents considered by the grand jury and conclusions reached as a result of the grand jury investigation." 656 F.2d at 860, 869. The D.C. Circuit held that all of these materials gathered by and provided to the Watergate special prosecutor were "matters occurring before the grand jury." The court also held that the names of *potential* witnesses and *potential* documentary exhibits, while less clearly within the scope of Rule 6(e)(2), were also "matters" within the scope of the rule, since their disclosure from the prose-

---

**2.** When appellant Fund for Constitutional Government made its request for documents, it made that request directly to the Watergate special prosecution force. During the course of the ensuing litigation, the Watergate special prose-

cution force was finally terminated, and custody of the documents which the Fund sought was transferred to the National Archives and Records Service. 656 F.2d at 860.

cutor's file would reveal the direction and strategy of the grand jury investigation. 656 F.2d at 870.

The touchstone of the *Constitutional Government* decision was that, as the special prosecutor had obtained possession of the sought information solely for use in grand jury investigations, disclosure of the materials which the prosecutor had used or had had access to in his files could not help but reveal the direction and strategy of the grand jury proceedings. The *Constitutional Government* court compared the case before it to the earlier en banc decision by the D.C. Circuit in *Dresser*, 628 F.2d at 1368. In *Dresser*, both a grand jury and the SEC had sought documents directly from Dresser, a corporation. Dresser attempted to avoid the SEC subpoena under Rule 6(e)(2) by claiming that the subpoena covered many or all of the documents also sought by the grand jury. The D.C. Circuit held en banc in *Dresser* that the fact that the grand jury was coincidentally seeking many of the same documents as the SEC did not make the information "matters occurring before the grand jury." 628 F.2d at 1383. As explained by the *Constitutional Government* court, disclosure of the documents by Dresser itself was permissible as disclosure would not elucidate the "inner workings of the grand jury." 656 F.2d at 870.

With this interpretation and explanation as to what may constitute "matters occurring before the grand jury," this Court returns to Plaintiff's attempt to take the deposition of Special Prosecutor Lopez and her attempt to obtain certain documents and materials in his possession.[3] Two categories of materials appear to be embraced by the subpoena *duces tecum.* It seeks

---

3. Plaintiff's Notice of Deposition (Doc. # 65) provides as follows:

The Plaintiff hereby gives notice that she will take the deposition of Jose M. Lopez on Monday, October 21, 1985 beginning at 9:30 a.m. at the offices of Huffman, Landis and Weeks, 103 North Miami, West Milton, Ohio 45483. Said deposition will be taken pursuant to subpoena, which subpoena will require that the witness bring with him the following:

(1) The original magnetic tape (or if the original tape is not in his possession or control, then any copy thereof within the possession or control of the witness), allegedly recorded by J. Czisma on the night of October 7, 1983 during the execution of a search warrant and raid upon the premises known as 409 Dawnview in Dayton, Montgomery County, Ohio.

(2) Any written statement, including the original magnetic tape recording (or an accurate typed transcription thereof), excluding testimony before any Grand Jury, within the custody or control of the witness, of any of the following:

(A) Any interview or statement of Defendants Varvel, Chabali, Navarre, Shows, Czisma, Shaw, Holland, Reynolds or Broomfield (said persons being a Defendant in this cause).

(B) Any interview or statement of any other person relating to, or making reference to the incidents of October 7, 1983 involving the execution of a search warrant and the raid upon the premises known as 409 Dawnview in Dayton, Montgomery County, Ohio, including the homicide of James Urseth and investigation of and arrest of Ronald Price.

(C) The interview or statement of any person concerning the acquisition of search warrants by the Dayton Police Department by the use of incomplete, false, misstated or misleading information on the documentation or Affidavit used to obtain such search warrants, including any such statements or interviews relating directly or indirectly to the search warrant issued in connection with the search of October 7, 1983 of the premises known as 409 Dawnview Avenue in Dayton, Montgomery County, Ohio.

(3) All papers, documents, photographs, notes, memoranda and other writings, (or copies thereof, if the originals are not within the custody or control of the witness) comprising the report of the Homicide Division of the City of Dayton Police Department on the death of James Urseth which occurred on October 7, 1983.

(4) All other papers, documents, photographs, notes, memoranda and other writings, (or copies thereof, if the originals are not within the custody of [sic] control of the witness) relating to the incidents which occurred on October 7, 1983 in connection with the execution of a search warrant at 409 Dawnview Avenue in the City of Dayton, Montgomery County, Ohio, including all documents relating to Ronald Price, his residence, James Urseth, the homicide of James Urseth and any subsequent investigation of such incidents by the Dayton Police Department, the Miami Valley Regional Crime Laboratory, the office of the witness as Special Prosecutor for the City of Dayton, and any other governmental entity. The deposition will be taken before an officer authorized for such purposes and shall continue from day to day until completed.

tapes, documents, photos, notes, memoranda and other writings obtained by the Special Prosecutor and his staff from sources such as the City of Dayton, the Dayton Police Department and the Miami Valley Regional Crime Laboratory. Plaintiff also seeks documents and other written materials which Special Prosecutor Lopez and his staff would themselves have generated in the course of the grand jury investigation with which they were involved.

■ The above-cited case authority indicates that the first category of materials, that obtained by the Special Prosecutor from other sources, might well not constitute "matters occurring before the grand jury" if they were sought by Plaintiff from the entities which had provided such materials to the Special Prosecutor. *Tigar & Buffone v. United States Department of Justice*, 590 F.Supp. 1012, 1016 (D.D.C. 1984). Yet, both of the above-described categories of materials, when in the possession of Special Prosecutor Lopez, were obtained and/or generated solely for the purpose of use in the investigations of the Special Grand Jury. Revelation of the sought materials in this particular context would have to reveal, at the very least, the direction and strategy of the grand jury's investigations, given the role of the Special Prosecutor. *Cf. United States v. Sells Engineering*, 463 U.S. 418, 430–431, 103 S.Ct. 3133, 3141, 3142, 77 L.Ed.2d 743 (1983). As such, this Court must conclude that the materials sought by Plaintiff from the Special Prosecutor are "matters occurring before the grand jury."

The deposition of Special Prosecutor Lopez, while not the type of information typically considered within the context of Rule 6(e)(2), cannot be divorced from the policy of grand jury secrecy, given the Special Prosecutor's role in the grand jury investigation. *See William Iselin & Co. v. Ideal Carpets, Inc.*, 510 F.Supp. 343 (N.D.Ga. 1980) (Rule 6(e)(2) and deposition of grand jury witness). Thus, in evaluating the Motions to Quash the scheduled deposition of the Special Prosecutor, the Lopez deposition must be considered within the scope of Rule 6(e)(2)'s protection as well.[4]

### (3) *"Particularized Need" Showing.*

Materials coming within the scope of Rule 6(e)(2) can be made available, under the exception for judicial proceedings set forth in Rule 6(e)(3)(C)(i), but the party seeking the materials must first establish a "particularized need" for the disclosure of the materials sought. *United States v. Sells Engineering*, 463 U.S. at 445, 103 S.Ct. at 3149; *United States v. Short*, 671 F.2d at 184 (citing *United States v. Procter & Gamble Company*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). In *Douglas Oil*, the United States Supreme Court defined "particularized need" as a showing by the interested parties that "the material they seek is needed to avoid a possible injustice in another proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only materials so needed." 441 U.S. at 222, 99 S.Ct. at 1674 (footnote omitted). The Supreme Court also noted that the interests in grand jury secrecy are reduced, although not eliminated, when the grand jury has ended its activities, thus somewhat lessening the burden of the party asserting the need for disclosure. *Id.* at 222–23, 99 S.Ct. at 1674–75.[5] In *United States v. Short*, a crimi-

---

4. The law and policy rationales which serve to block the deposition of Mr. Lopez and the subpoena *duces tecum* directed to him would, in this Court's view, appear equally relevant to any discovery sought of members of his staff in the office of the Special Prosecutor. Thus, without the showing of "particularized need" discussed *infra* in Section A, Subpart 3, such staff members could not be deposed by Plaintiff. Nor could Plaintiff permissibly seek documents from the Special Prosecutor's files to which such staff members might have access.

5. In a footnote, the *Douglas Oil* court made the following attempt to explore what constitutes a "particularized need":

As noted in *United States v. Procter & Gamble Company*, 356 U.S. at 683, [78 S.Ct. at 987] the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.' Such use is necessary to avoid misleading the trier of fact. Moreover, disclo-

nal case, the criminal defendant's claim that disclosure of a grand jury transcript would reveal exculpatory evidence was insufficient to persuade the Sixth Circuit to overcome the "firmly rooted policy of secrecy of grand jury proceedings." 671 F.2d at 187.

█ The Court cannot dispute Plaintiff's contention that the statements, facts and documents compiled and/or reviewed by the Special Prosecutor and his staff are very relevant to the instant civil action. In this Court's understanding, however, a showing of relevance alone is not sufficient to satisfy the "particularized need" requirement before disclosure can be ordered of "matters occurring before the grand jury." *See United States v. Sells Engineering,* 463 U.S. at 445–46, 103 S.Ct. at 3149. Therefore, neither the deposition nor the documents sought are to be provided to Plaintiff. Defendant's Motion for Protective Order and to Quash Deposition, together with that of Special Prosecutor Lopez, is sustained. In the event that Plaintiff can make a showing of "particularized need" for some or all of the subpoenaed materials and/or the deposition, this Court will reconsider its ruling, and will order an in-camera hearing if necessary.

(B) *Executive Privilege: Internal Affairs.*

Given this Court's ruling, *supra,* as to the scope of grand jury secrecy, this Court needs not address the arguments of Defendants Dayton and Broomfield that the subpoena *duces tecum* upon Special Prosecutor Lopez violates the Defendant's executive privilege insofar as it would disclose the internal affairs of Defendants.[6]

The executive privilege for internal affairs, however, is relevant to Plaintiff's Motion to Compel (Doc. # 84), as Dayton has relied upon this privilege in refusing to produce a number of documents requested from it by Plaintiff. (Doc. # 84, Exhibits 2 and 3). The essence of this executive privilege claim by Defendant is that certain internal matters must be kept confidential in order that the Police Department be allowed to effectively clean its own house and to sets its affairs in order through internal investigation and discipline.

█ A party objecting to discovery on the basis of any privilege has the burden of establishing the existence of that privilege. Defendant cites an absolute executive privilege, an Ohio statutory privilege, and a qualified executive privilege in support of its contention that Plaintiff is not entitled to the documents which she seeks from Dayton Police Department files. The Court first notes that the absolute executive privilege recognized in *Kott v. Perini,* 283 F.Supp. 1 (N.D.Ohio 1968), where police investigatory records were held confidential and privileged, has not been followed by subsequent courts presented with such claims of absolute executive privilege in civil rights cases. *Crawford v. Dominic,* 469 F.Supp. 260, 262 n. 2 (E.D.Pa.1979), *Diamond v. City of Mobile,* 86 F.R.D. 324, 328 (S.D.Ala.1978), *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 n. 8 (E.D.Pa.1973). The Court also notes, and Defendant does

---

sure can be limited strictly to those portions of a particular witness' testimony that bear upon some aspect of his direct testimony at trial.
441 U.S. at 222, n. 12, 99 S.Ct. at 1674, n. 12.
 The Court also takes note of the "particularized need" found by the Sixth Circuit to exist in the case of *In re Grand Jury Matter Petition of Frank R. Metts,* 765 F.2d 144 (6th Cir.1985). Metts was sued in state court for violation of a Florida statute and on privacy grounds. He attempted to remove to federal court on the basis that he was acting under a federal official due to his involvement with a possible federal special grand jury agent. His association with the possible grand jury agent would have also

provided him a defense to the charges against him. On this basis, Metts claimed a "particularized need" to obtain the minutes of the special grand jury. Reversing the district court, the Sixth Circuit held that injustice would result if Metts were foreclosed from establishing both his right to removal and his available defenses. Accordingly, it ordered disclosure of the grand jury minutes sought by Metts.

6. This Court also needs not address Defendants' argument that, as the City of Dayton is a self-insurer, disclosure of the documents by Special Prosecutor Lopez would violate the attorney/client privilege.

not disagree, that federal law controls the applicability of privileges herein, as the basis for this Court's jurisdiction is a federal statute, 42 U.S.C. § 1983. Federal Rule of Evidence 501; *Spell v. McDaniel*, 591 F.Supp. 1090, 1119 (E.D.N.C.1984).

■ With respect to the claim by Defendant of a qualified executive privilege for internal affairs materials, both parties recognize that such a privilege must be determined on a case-by-case basis by means of a balancing test. Only if the damage to the executive department or to the public interest from disclosure significantly outweighs the harm to plaintiff from nondisclosure will the privilege be upheld. *Dos Santos v. O'Neill*, 62 F.R.D. 448, 449 (E.D.Pa.1974). In *Frankenhauser*, 59 F.R.D. at 344, the court compiled a list of competing factors which enter into this balancing process for purposes of the qualified executive privilege. Those factors are as follows:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon persons who have given information of having their identities disclosed;

(3) The degree to which governmental selfevaluation and consequent program improvement will be chilled by disclosure;

(4) Whether the information sought is factual data or evaluative summary;

(5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) Whether the police investigation has been completed;

(7) Whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation;

(8) Whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) Whether the information sought is available through other discovery or from other sources; and

(10) The importance of the information sought to the plaintiff's case.

Both Plaintiff and Defendant Dayton believe the *Frankenhauser* factors to be supportive of her or its particular position with respect to the executive privilege for internal affairs files which has been claimed. After application of these factors and subsequent case law to the groups of disputed discovery items set forth in Plaintiff's Motion to Compel, this Court concludes that Defendant's assertion of the privilege is not well-taken, with certain exceptions as noted *infra*. Obviously, the Court's ruling on Defendant's claim of this executive privilege may also have applicability to the subpoena *duces tecum* upon Special Prosecutor Lopez, should Plaintiff, having been foreclosed from enforcing her subpoena, attempt to procure from their original sources the documents originally sought from Special Prosecutor Lopez.

(1) *Plaintiff's Document Request No. 33 —Police Reports Relating to Death of James Urseth and Search of Premises of Ronald Price on October 7, 1983.*

■ The case law is clear that Plaintiff is entitled to the factual portions of the Dayton Police Homicide Division reports concerning the homicide of James Urseth and the execution of the search warrant by the individual police officer Defendants on October 7, 1983. *Dos Santos*, 62 F.R.D. at 450–51; *Frankenhauser*, 59 F.R.D. at 345; *Wood v. Breier*, 54 F.R.D. 7, 10 (E.D. Wis.1972). Defendant suggests a reading of *Frankenhauser* which would transform its ninth factor in the balancing process to a test requiring Plaintiff to prove that the information which she seeks is not otherwise available. (Doc. # 86). Not only have other courts held that the most important of the *Frankenhauser* factors is the tenth factor, that being the importance of the information sought to the plaintiff's case, *Crawford*, 469 F.Supp. at 263, but the *Frankenhauser* court itself believed that no harm to the public interest could flow from allowing disclosure of the factual por-

tions of police reports and the signed statements of witnesses. *Frankenhauser,* 59 F.R.D. at 345. This Court believes the information contained in the Homicide Division report to be of material importance to Plaintiff's claim, and that the harm caused to Plaintiff's action by denial of this material outweighs the harm caused to Defendant's internal procedures by allowing the information to be revealed.

Even if Plaintiff could obtain access on her own to such factual data, the Police Department investigation was conducted at a time quite proximal to the incident, and is undoubtedly comprehensive and reliable. *Dos Santos,* 62 F.R.D. at 451, *Frankenhauser,* 59 F.R.D. at 345. As the only criminal proceeding which remains pending is the appeal of Defendant Czisma, and as Plaintiff has already delayed the instant action until the resolution of the remainder of the criminal proceedings against the Defendants herein, this Court does not believe that disclosure will interfere unduly with the criminal proceedings. To the extent that Defendant alleges that intradepartmental disciplinary proceedings in the Dayton Police Department are continuing, this Court cannot accept that such attempts at internal scrutiny, however laudable, should cordon off the documents sought from discovery in this federal civil rights action.

Defendant alleges that a confidential informant could be placed in jeopardy should Plaintiff's Motion to Compel be sustained. (Doc. #78). To the extent that the internal Homicide Division police report covered in Document Request No. 33 or other investigatory files ordered disclosed in this opinion would reveal or tend to reveal the identity of a confidential informant, the public has an interest in deleting identifying information from the files sought in discovery. *Crawford,* 459 F.Supp. at 264. In order to claim such protection, Defendant must in good faith identify each particular doc-

ument which would reveal or tend to reveal the identity of a confidential informant, and deliver it to the Court under seal for an in-camera inspection. At that time, the Court will decide whether the document should be disclosed, whether certain portions of the document may be redacted prior to disclosure or whether the document should be wholly prohibited from disclosure. The Court relies on the good faith of Defendant to assert this privilege in a thoughtful and well grounded manner, and relies upon counsel to make every effort to resolve such matters between themselves before submitting documents to the Court for in-camera inspection.[7]

(2) *Plaintiff's Document Request No. 30 —Statements of Witnesses, Including those of Individual Police Officer Defendants.*

█ For much the same reason as stated in Subpart 1, *supra,* the statements sought in Document Request No. 30 must be provided to Plaintiff. The Court has already set forth its rationale as to why Plaintiff is entitled to such factual data. As observed by the Court in *Mercy v. County of Suffolk,* 93 F.R.D. 520, 523 (E.D.N.Y.1982), moreover, the interests of the Federal Rules of Civil Procedure in full blown discovery and just, speedy and inexpensive litigation, would hardly be served by requiring Plaintiff to duplicate the efforts already undertaken by the Defendants in securing the statements of these witnesses.

(3) *Plaintiffs Document Request No. 29—Blood, Urine or Other Chemical Test Results*
*Plaintiff's Document Request No. 31—Scientific Test .Results, Including Firearm Analysis.*

█ Plaintiff seeks urine, blood or other chemical tests performed on the individual

---

7. Defendants also assert in their memoranda that Plaintiff is in no way entitled to the evaluative summaries contained in the internal police documents which are the subject of Plaintiff's Motion to Compel. Although it seems likely that the Homicide Division report into the events of October 7, 1983 are factual in nature, to the extent that this document request covers matters which are not factual in nature, the discovery of any evaluative summaries is to be governed by the ruling in Subpart 5, *infra,* as to procedures in the event of evaluative summaries.

Defendants or upon James Urseth in connection with the October 7, 1983 incident in question. She also seeks the results of any scientific tests performed by or on behalf of Defendant Dayton and its Police Department in connection with the incident under scrutiny. For the reasons stated *supra* in Subparts (1) and (2), this Court sees no reason why the executive privilege for internal affairs should prevent discovery of these test results. *See Frankenhauser* 59 F.R.D. at 345.

■ Defendant has also asserted that the work product privilege prevents discovery of these test results. As far as this Court can ascertain, these reports should have been prepared in the ordinary course of police business pursuant to the normal police practice of conducting investigations after an event such as that on October 7, 1983. As noted by the Court in *Mercy,* 93 F.R.D. at 522, the "mere possibility" of litigation is insufficient to prevent disclosure. As factual accounts of the condition of Defendant officers and decedent Urseth, and of any instruments, firearms, et cetera, which may have been employed in the homicide on the Price premises, it appears to this Court that such test results are not shielded from discovery as "work product." Defendant has made no argument in its memoranda which would apprise the Court that these test results were obtained in any other manner or form or for any other purpose than for a factual inquiry into the events of October 7, 1983 on the Price premises.

(4) *Plaintiff's Document Request No. 27 —Special Directives of the Organized Crime Unit (OCU) of the Dayton Police Department*

*Plaintiff's Document Request No. 32—Radio Transmissions.*

■ For the reasons aforesaid, these materials are not prohibited from disclosure by the internal affairs privilege. Defendant contends in response to Document Request No. 27 that it has produced the only directive that exists in its production of the operations manual. Doc. # 1233 through 1349. (Doc. # 86). This Court has no indication that said representation is made in anything but the utmost of good faith by Defendant's counsel.

Defendant has not responded to Plaintiff's contention that, while the 8:00 through 8:45 segment of the police radio transmissions on October 7, 1983 has been produced, public surveillance of the Price residence commenced several hours prior to this time frame. Plaintiff's assertion, unrebutted by Defendant, is that radio transmissions from October 7, 1983 and October 8, 1983 would reveal the activity of Defendants on or around the Price premises. If a log of the radio transmissions for this extended time frame is available, this Court sees no reason why it should not be produced to Plaintiff.

(5) *Plaintiff's Document Requests 14 Through 21—Reports of Use of Force and Firearms by Defendants and Other OCU Members, Citizen Complaints about Defendants and other OCU Members, Reports of Investigations into Citizen Complaints, Internal Files as to Defendants and/or each Citizen Complaint.*

The thrust of these final document requests by Plaintiff must be considered in light of Plaintiff's Amended Complaint. (Doc. # 49). Plaintiff's contention in her Amended Complaint is that the homicide of James Urseth and the search of the Price premises were part of a custom or policy of unconstitutional conduct which was carried out by the OCU, the police unit to which the individual Defendants belonged and which was supervised by Defendants Reynolds and Broomfield. Supervisory liability on the part of Defendants Broomfield and Reynolds is alleged on the theory that they either ratified a policy of violence and illegal searches, or that they knew that such conduct had occurred or was occurring and that they failed to train and supervise their subordinates in order to reasonably avoid such unconstitutional conduct. Municipal liability on the part of Defendant Dayton is

alleged on the basis that it adopted such an unconstitutional custom or practice based on the acts of its supervisory officials.

 This Court has no doubt that the materials sought by Plaintiff in Document Requests 14 through 21 are vital to her claims of supervisory and municipal liability under 42 U.S.C. § 1983, and that the internal police documents sought as to Defendants and the other OCU members are relevant and necessary to Plaintiff's establishment of her claim of a custom and practice of unconstitutional conduct. As such, this material must be disclosed to Plaintiff, on the conditions set forth herein. *Tyner v. City of Jackson, Mississippi*, 105 F.R.D. 564, 566 (S.D.Miss.1985); *Spell*, 591 F.Supp. at 1017; *Crawford*, 469 F.Supp. at 263. In allowing production of such evidence of force, firearm use, complaints and investigations, other courts have given priority to the tenth *Frankenhauser* factor discussed *supra*, that being the importance of the information sought to the Plaintiff's case. *Crawford*, 469 F.Supp. at 263. In order to have any chance of proving her allegations, Plaintiff must be allowed to review these materials. Developments in the Law—Privileged Communications, 98 Harv.L.Rev. 1450, 1623 (1985).

It is obvious, from this Court's ruling *supra* in Section B, Subparts 1 through 4, that any factual material contained in Document Requests 14 through 21 must be provided by Defendant to Plaintiff. An added difficulty, however, is that Document Requests 14 through 21 seek access to files which are likely to contain both factual data and evaluative summaries prepared by internal police sources as to their observations of the conduct of individual officers and the complaints engendered by such conduct.

 Defendants argue that the disclosure of such supervisory evaluations would frustrate the public policy served by internal and municipal police investigations. This Court recognizes the force of this claim of executive privilege in the context of the internal recommendations and judgment calls which could be contained in these internal investigation files. Nonetheless, this Court finds more persuasive the countervailing argument for disclosure of such evaluative materials, as set forth in *Spell:*

> Defendants also implicitly argue that some of the materials Plaintiff seeks should be suppressed because they contain supervisory evaluations of the conduct of the officers involved. However, to apply a *per se* rule exempting supervisory evaluations from discovery would probably bar scrunity of highly relevant evidence which cannot be adequately developed in any other way. *Crawford v. Dominic*, 469 F.Supp. at 265. In a § 1983 custom and practice case such as this, internal supervisory evaluations may be the best evidence available of the state of mind of Defendant supervisors and of other agents of the municipality and police department responsible for personnel and policy decisions. *Id.* Such evaluations are clearly relevant to determining what the Defendants knew and when they knew it.
>
> For these reasons, the Court is persuaded that supervisory evaluations should not be shielded or edited unless, as to each such assertedly privileged evaluation, Defendants can make a showing that confidentiality is vital to the decision making processes of the municipality or would otherwise substantially harm the public interest. *Id., Boyd v. Gullett*, 64 F.R.D. [169] at 178 [D.M.D. 1974]; *Dos Santos v. O'Neal*, 62 F.R.D. at 451.

591 F.Supp. at 118.

Like the Court in *Spell*, this Court is persuaded that the evaluative summaries contained in Document Requests 14 through 21, or elsewhere in the materials discussed in this Decision, should be disclosed unless, as to each particular document for which the privilege is claimed, Defendants can make a showing that confidentiality is vital to the decision-making processes of Defendant Dayton and its Police Department or that disclosure would otherwise substantially harm the public in-

terest. As in the procedures set forth in Subpart (1), *supra*, with respect to confidential informants, Defendant must identify each particular document as to which it feels it can make this showing, and deliver it to the Court under seal. Counsel for Defendant are urged to be extremely discriminating in their assertion of this privilege and in their proffer to the Court of such documents for in-camera review. The Court will then promptly decide whether the supervisory evaluations so identified by Defendant are in fact prohibited in whole or in part from disclosure by the internal affairs privilege.

(C) *Protective Order.*

The Court imposes the following conditions upon the documents ordered produced by Defendant in Part (B) of this Opinion. Inspection and access to the documents and materials produced shall be limited to Plaintiff's counsel and to such persons as may be employed by Plaintiff's counsel in connection with the Plaintiff's preparation for trial on this matter. Plaintiff shall not disclose the contents of the documents and materials to any other persons other than those described, except by order of this Court.

(D) Summary.

Defendants' Motion for Protective Order and to Quash Subpoena (Doc. # 71) is sustained on the terms and conditions set forth in Part (A) of this Opinion. Special Prosecutor Jose Lopez's Motion for Protective Order and to Quash Subpoena is similarly sustained. (Doc. # 74). Plaintiff's Motion to Compel is sustained upon the terms and conditions set forth in Parts (B) and (C) of this Opinion. (Doc. # 84).