Brian PURICELLI

v.

**BOROUGH OF MORRISVILLE, et al.**

**Donald GARNER**

v.

**TOWNSHIP OF WRIGHTSTOWN, et al.**

**Civ. A. Nos. 89–9161, 90–1228.**

United States District Court,
E.D. Pennsylvania.

April 26, 1991.

---

Brian Puricelli, pro se.

Patricia V. Pierce, Philadelphia, Pa., for Garner.

William F. Holsten, Media, Pa., Donald Wieand, Allentown, Pa., Jill Carlin Schrager, Robert Hanna, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

These consolidated [1] federal civil rights actions with pendent state claims arise from the above-captioned defendants' alleged efforts to retaliate against plaintiffs Puricelli and Garner for refusing to acquiesce in certain defendants' allegedly corrupt and illegal activity.[2] Plaintiffs claim, *inter alia,* that defendants Hughes, Rubenstein, and Reichley convened a Bucks County grand jury in bad faith to investigate plaintiffs Puricelli and Garner.

Before the court are two related motions stemming from defendants' objections to discovery. Defendants Rubenstein and Reichley have moved for reconsideration of this court's February 5, 1991, order granting plaintiff Puricelli's Fed.R.Civ.P. 37(a) Motion to Compel Answers to Interrogatories. Defendants claim, for the first time, a grand jury privilege based on Pennsylvania state law. Defendants Rubenstein, Reichley, Armitage, Brosha, and County of Bucks have also moved for a protective order denying plaintiff Garner access to the same information sought by plaintiff Puricelli and claiming, in a timely manner, the same state-created grand jury privilege.

## I. PROCEDURAL HISTORY

The procedural facts relevant to the disposition of these motions are as follows. On January 10, 1991, defendants Rubenstein and Reichley served their answers and objections to plaintiff Puricelli's interrogatories. Their answers to questions bearing on the grand jury investigation were identical to, or variations of, this objection to Interrogatory 13 ("Have you been asked or agreed with anyone to investigate Plaintiff?"):

> Objected to as vague, ambiguous, irrelevant, overly broad, unduly burdensome, privileged, beyond the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

Exh. A at 12 (Plaintiff Garner's Reply Brief). There was no mention of a grand jury privilege. Plaintiff Puricelli filed a Motion to Compel Answers to Interrogatories on January 19, 1991. Defendants responded on January 30, 1991, and again made no specific reference to a grand jury privilege.[3] By order dated February 5, 1991, defendants were told to answer the interrogatories by February 25, 1991.[4] Defendants moved for reconsideration of this

---

**1.** Plaintiff police officer Brian Puricelli initiated suit on December 27, 1989. After informing various law enforcement agencies of alleged criminal conduct by defendant Hughes, former Chief of the Wrightstown Police Department, plaintiff asserts he became the target of groundless criminal investigations by defendants. One such investigation accused plaintiff Donald Garner, auto body business owner, of acting in concert with plaintiff Puricelli to steal abandoned vehicles and sell their parts. Plaintiff Garner claims he was investigated for the sole purpose of making him testify falsely about plaintiff Puricelli. Plaintiff Garner further claims he lost his status as a towing agent for the Wrightstown Police Department when he refused to give false information to the grand jury. Plaintiff Garner filed his civil rights complaint on February 21, 1990. Because these cases involve common questions of law and fact, they were consolidated by order of this court on October 10, 1990.

**2.** This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction over pendent state claims).

**3.** Defendants admit they did not specifically raise a grand jury privilege in either their answers and objections to plaintiff Puricelli's interrogatories or their response to plaintiff Puricelli's motion to compel. (Reply of Defendants at 2).

**4.** This deadline to answer the interrogatories was formally extended to March 25, 1991, to prevent the imposition of sanctions upon defendants for not meeting a court-ordered discovery deadline and to allow the court to receive plaintiffs' responses to the Motion for Reconsideration before ruling. *See* Order of February 22, 1991. With the exception of information relating to the grand jury, defendants responded with supplemental answers within this deadline.

order on February 20, 1991,[5] arguing for the first time that a Pennsylvania statute conferred a privilege barring the discovery plaintiff seeks, namely the testimony and physical evidence presented to the Bucks County grand jury that investigated plaintiffs Puricelli and Garner and returned no indictment.

On or about February 26, 1991, plaintiff Garner's counsel served a request for any and all documents relating to the grand jury empaneled to investigate Garner and co-plaintiff Puricelli. Defendants' March 14, 1991, response, drafted well after the Motion for Reconsideration, did explicitly object on the basis of a Pennsylvania grand jury privilege. Defendants Rubenstein, Reichley, Armitage, Brosha, and Bucks County also reiterated their objections to plaintiff Garner's document request the very next day when they filed a Motion for a Protective Order on March 15, 1991.

## II. DISCUSSION

We first consider whether defendants waived their right to object to plaintiff Puricelli's interrogatories on the basis of the so-called grand jury privilege.

■ Generally, in the absence of good cause or an extension of time, a party who fails to serve an objection to interrogatories within the time prescribed by Rule 33 waives the right to later raise that objection. *Brock v. Gerace*, 110 F.R.D. 58, 62 (D.N.J.1986). Defendants argue they preserved their grand jury privilege objection, despite any reference to it, by incanting the stock phrases "privileged," "beyond the scope of permissible discovery," and "not reasonably calculated to lead to the discovery of admissible evidence." However, defendants "cannot simply intone this familiar litany" to voice a successful objection to an interrogatory. *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296 (E.D.Pa.1980). Rather, defendants must

show specifically how each interrogatory is privileged or vague or overly broad. *Id.* "General objections without specific support may result in waiver of the objections." *Id.* at 297.

■ Technically, defendants did waive their objection, but that waiver is meaningless under the present circumstances. Because these cases are consolidated and defendants did timely object to plaintiff Garner's document request with the appropriate specificity, it would be senseless to consider the objection waived as to co-plaintiff Puricelli and not as to plaintiff Garner. Moreover, technical waiver does not relieve this court of its responsibility to insure the proper functioning of the grand jury system, a system dependent upon the secrecy of its proceedings. Resolution of this discovery dispute requires the court to balance the strong interest in grand jury secrecy against the need for disclosure in the interest of justice.

■ Defendants bear the burden of proving the existence of a grand jury privilege and its applicability to plaintiffs' discovery requests. *See In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3d Cir.1990). In support of their claim of privilege, defendants cite the Investigating Grand Jury Act, 42 Pa.Cons.Stat.Ann. §§ 4541–4553 (Purdon 1981). Pennsylvania's Investigating Grand Jury Act permits disclosure of grand jury matters to Commonwealth attorneys in two situations— when it is necessary for them to perform their duties, and when they disclose information, with court approval, to assist state and federal law enforcement agencies in crime investigation. 42 Pa.Cons.Stat.Ann. § 4549(b). All other attorneys, jurors, stenographers, interpreters, typists, or operators of recording devices must obtain approval from the supervising judge before violating their oath of secrecy.[6] *Id.* Under

---

**5.** Contrary to plaintiff Puricelli's calculations, defendants' Motion for Reconsideration was timely under Local Rule 20(g) and Fed.R.Civ.P. 6. The February 5, 1991, Order was filed on February 7, 1991. Omitting intermediate weekends and President's Day, the ten-day period in which to file a motion for reconsideration ex-

pired on February 20, 1991, the day defendants filed their motion.

**6.** Plaintiffs are free to depose grand jury witnesses—in this case, defendants—about their testimony. Witnesses may disclose their testimony except "for cause shown in a hearing

this statutory scheme, plaintiffs apparently have no direct right of access to the content of the grand jury proceedings.

While this statute might appear to bar plaintiffs' discovery of any grand jury transcripts or evidence at issue, defendants have overlooked the threshold question of whether this Pennsylvania statute has any bearing on a discovery dispute in federal district court in a federal question case. The Federal Rules of Civil Procedure govern all civil suits brought in United States district courts. Fed.R.Civ.P. 1. The rules allow written interrogatories and document requests to inquire into any non-privileged matter permitted under the general limits of Fed.R.Civ.P. 26(b)(1). *See* Fed.R.Civ.P. 33(b), 34(b). Neither Rule 26(b) nor any other civil procedure rules, however, construe what is meant by "privileged." The construction of that term is left to the Federal Rules of Evidence whose "rule with respect to privileges applies at all stages of all actions, cases, and proceedings." Fed.R.Evid. 1101(c); *accord,* Wright & Miller, Federal Practice and Procedure: Civil § 2016 (1991 Supp.) (Fed.R. Evid. 1101(c) applies the privilege provisions of Fed.R.Evid. 501 to discovery).

Fed.R.Evid. 501, the "rule with respect to privileges," states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a 'claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Id.*

Plaintiffs' consolidated action is a federal question case. Thus federal, rather than state, rules of privilege apply to the instant discovery dispute. *E.g., Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir.1982); *In re Grand Jury Impaneled January 21, 1975,* 541 F.2d 373, 379 (3d Cir.1976). Federal common law of privileges also applies to plaintiffs' pendent state civil rights claims.[7] *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d at 104. There is no doubt that it is the decisions of federal courts that control in this regard.[8]

■ Having finished our choice-of-law analysis, we now examine the extent to which federal common law confers a privilege on state grand jury matters. Upon review of caselaw, we find federal common law accords state grand jury proceedings whose discovery is sought in civil cases the same protection afforded federal grand jury proceedings. *See Socialist Workers Party v. Grubisic,* 619 F.2d 641, 644 (7th Cir.1980) (scope of privilege afforded state grand jury materials properly defined by

---

before the supervising judge." 42 Pa.Cons.Stat. Ann. § 4549(d) (Purdon 1981). However, defendants' testimony goes to the heart of plaintiffs' case, and there is no way to corroborate or attack defendant witnesses' current recollection without the transcripts of the grand jury proceedings.

7. Read literally, Fed.R.Evid. 501 suggests that courts should apply federal common law of privileges to federal question claims and state privilege law to pendent state claims. Congress, however, did not intend this result. The Senate Report accompanying Rule 501 states: "It is also intended that the Federal law of privileges should be applied with respect to pendant [*sic*] State law claims when they arise in a Federal

question case." S.Rep. No. 93–1277, *reprinted in,* 1974 U.S. Cong. & Admin.News 7051, 7059 n. 16. From a practical standpoint the Third Circuit observed in *General Nutrition,* "Obviously applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable." 671 F.2d at 104. It is especially important that the federal common law govern these particular cases as adoption of Pennsylvania's disclosure standard might insulate possible abuses of the state grand jury system from detection in a federal civil rights action. *See generally, Urseth v. Dayton,* 110 F.R.D. 245, 248 (S.D.Ohio 1986).

8. U.S. Const. art. VI (supremacy clause).

rule governing disclosure of federal grand jury proceedings); *Urseth v. Dayton,* 110 F.R.D. 245, 248 (S.D. Ohio 1986) (federal approach to disclosure of grand jury material applies to state grand jury testimony); *Williams v. O'Meara,* No. 82–C278, 1987 WL 10305 (N.D.Ill. Apr. 29, 1987) (LEXIS, Genfed library, Dist file) (applied federal rule to disclosure of state grand jury testimony without discussion of scope).

▇ Federal courts handle requests for civil use of grand jury proceedings by reference to Fed.R.Crim.P. 6(e)(3). Parties seeking grand jury transcripts under this rule bear the burden of demonstrating that their need for the materials outweighs the public interest in grand jury secrecy. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). In *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the Supreme Court described exactly what a private party must show in order to overcome the presumption of grand jury secrecy:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material as needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations, ... [T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674. "Particularized needs" found to warrant disclosure include using the grand jury transcript to impeach witnesses at trial, to refresh their recollection, and to test their credibility. *Id.* at n. 12 (citing *United States v. Procter & Gamble Co.,* 356 U.S. at 683, 78 S.Ct. at 987). Demonstration that "without the transcript a defense

would be greatly prejudiced or that without reference to it an injustice would be done" could also justify disclosure. *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986, *quoted in Douglas Oil,* 441 U.S. at 221, 99 S.Ct. at 1674. Where the need for secrecy has been reduced, as where the grand jury has concluded, the burden resting on the party seeking disclosure will be lighter. *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675.

▇ The Bucks County Grand Jury whose transcripts and physical evidence are sought in this case adjourned in April 1989. (Puricelli's Amended Complaint, ¶ 27). Consequently plaintiffs may obtain disclosure on a lesser showing of need. Plaintiffs, however, must still satisfy all the requirements of *Douglas Oil,* the first of which is demonstrating the grand jury transcript is needed "to avoid a possible injustice" in their civil rights litigation.

The justifications plaintiffs urge in support of disclosure on this "possible injustice" prong fall well within those envisioned by the Supreme Court. Not only do plaintiffs require the grand jury transcripts for possible impeachment and credibility purposes, they require the transcripts to prove elements of their claims. Plaintiff Puricelli alleges that defendant prosecutor Rubenstein violated a confidentiality order entered by the Honorable John B. Hannum by releasing certain information to the grand jurors. There is no way to prove what defendant Rubenstein did or did not do without access to a complete transcript of the grand jury proceedings. Likewise, Plaintiff Garner alleges defendants used the grand jury process to harass co-plaintiff Puricelli and targeted Garner when he refused to testify falsely. Plaintiff Garner argues, supported by affidavit,[9] that certain defendants deliberately withheld exculpatory evidence from the grand jury, tending to prove the malice or intent element of plaintiff Garner's claim. Only by examination of the entire grand jury proceedings, however, can plaintiff prove his case.

---

**9.** Plaintiff Garner's use of a supporting affidavit has convinced the court that plaintiffs have raised serious questions of grand jury abuse and

are not seeking the complete grand jury proceedings for purposes of a "fishing expedition."

Surely the proof of plaintiffs' case would be "greatly prejudiced," if not effectively precluded, without the record of the grand jury proceedings.

The second and third prongs of *Douglas Oil* require plaintiffs to show their need for disclosure is greater than the need for continued secrecy and to show their request covers only the materials they need. To determine whether plaintiffs have shown the balance tips in their favor, the court itself must be in a position to evaluate the continuing need for secrecy and the propriety of plaintiffs' request. This court is not in the most optimal position. *Douglas Oil*, 441 U.S. at 225, 99 S.Ct. at 1676. The grand jury was not supervised by this court or any court in this district, and the transcript is not in the court's possession. While this court ultimately has the power to obtain the transcripts and to order disclosure of the Bucks County grand jury proceedings, *Grubisic*, 619 F.2d at 644–45, we shall refrain from so doing at this time. Comity, respect for the sovereignty of Pennsylvania and the integrity of its grand jury system, compel us to give the Pennsylvania court that supervised the county grand jury an opportunity to review plaintiffs' disclosure request.

We shall order plaintiffs and defendants to jointly petition the supervising judge for release of the grand jury materials. While the Pennsylvania court may not veto this court's decisions regarding privilege in a federal civil rights case, a petition to the state court will "forestall unnecessary intrusion" by this court in Pennsylvania's grand jury proceedings, or will at least "ensure that the important state interest in secrecy is thoroughly considered." *Grubisic*, 619 F.2d at 644. In the event of partial or non-disclosure, plaintiffs may renew their disclosure request in this court.

An appropriate order follows.

## ORDER

AND NOW, this 26th day of April, 1991, upon consideration of defendants Rubenstein and Reichley's Motion for Reconsideration, defendants Rubenstein, Reichley, Armitage, Brosha, and Bucks County's Motion for a Protective Order, and the responses thereto, it is hereby ORDERED:

1. The Motion for a Protective Order is DENIED.

2. The Motion for Reconsideration is GRANTED IN PART and DENIED IN PART.

3. The parties shall jointly petition the supervising judge for disclosure of all the grand jury proceedings that relate to the investigation of plaintiffs Garner and Puricelli.

4. In the event of partial or non-disclosure, plaintiffs may renew their disclosure request in this court.